**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**SCOTT CHAPLIN,**

                                        **Petitioner,**

        **vs.**                                                 **9:17-cv-00718**
                                                                **(MAD/DEP)**

**MICHAEL KIRKPATRICK,**
**Superintendent of Clinton Correctional**
**Facility,**

                                        **Respondent.**

_____

**APPEARANCES:**                                **OF COUNSEL:**

**SUOZZI LAW OFFICE**                           **THERESA M. SUOZZI, ESQ**.
480 Broadway
Suite 218
Saratoga Springs, New York 12866
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**                      **MARGARET A. CIEPRISZ, AAG**
**STATE ATTORNEY GENERAL**
120 Broadway
New York, New York 10271
Attorneys for Respondent

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Petitioner Scott Chaplin ("Petitioner") filed this petition on July 2, 2017 for a writ of

habeas corpus to vacate his conviction of second-degree felony murder, New York Penal Law

("N.Y.P.L.") § 125.25(3), pursuant to 28 U.S.C. § 2254. *See* Dkt. No. 1. Petitioner asserts seven

grounds for habeas relief, and alleges that these errors deprived him of a fair trial and due process

of law in violation of his fundamental constitutional rights under the Sixth and Fourteenth

Amendments. *Id*. at 2-63. In a Report and Recommendation, Chief Magistrate Judge Peebles

recommended denial and dismissal of the petition in its entirety. *See* Dkt. No. 12. Petitioner has not objected to the Report and Recommendation.

## II. BACKGROUND

### A.     Factual Background

On the morning of March 24, 1994, the victim was found bludgeoned to death inside of a staff apartment of a residence for the developmentally disabled, the victim's place of employment. *People v. Chaplin*, 134 A.D.3d 1148, 1149 (3d Dep't 2015). Interviews with the victim's family members revealed that Petitioner, who was seventeen years old at the time, had been sexually involved with the victim. *Id.* As noted in Chief Magistrate Judge Peebles's Report and Recommendation, Petitioner and the victim both worked in the mail room of a local newspaper, *The Troy Record*, and the victim's sister was aware of the victim having an affair with someone who worked at the newspaper. Dkt. No. 12 at 3-4.

On the night of March 23, 1994 at 7:39 p.m., someone made a telephone call to the staff apartment from a pay telephone at a garage across the street from Petitioner's home. *Id.* at 4. An employee of the garage testified that he knew Petitioner and had seen him use the garage pay telephone at least once per day in March 1994. *Id.* At approximately 8:00 p.m. that night, the victim's sister called the staff apartment and noted that someone who sounded like a man answered, stated "I got it," and abruptly hung up. *Id.*

There was no evidence of forced entry at the location of the murder. *Id.* at 3. The victim's body was found in the living room and her purse could not be located. *Id.* According to the victim's daughter, her mother was never without her purse, and carried no credit cards, only large amounts of cash. *Id.* When the murder was discovered, law enforcement officers found two rolls of paper towels on the kitchen counter of the staff apartment, one of which had been used and had

2

a bite mark impression on the remaining paper towels. *Id.* at 4. In 2004, the saliva at the site of the bite mark impression was matched to Petitioner's DNA profile, and a forensic odontologist testified that the impression matched Petitioner's bite pattern. *Id.* at 4-5. Additionally, investigators found a piece of paper towel wrapped around the door knob inside the bedroom of the apartment. *Id.* at 5. DNA testing conducted in 2001 yielded a "mixture profile," indicating that the DNA was consistent with at least two individuals, one of whom was a male. *Id.* At trial, testimony revealed that the probability of someone other than Petitioner contributing to the mixed DNA profile was determined to be one in twenty. *Id.*

Shortly before the murder, Petitioner had made comments to his friend, Lawrence Chamberlain, regarding the victim, stating that "the bitch is ugly, she has mad money," and "she buys me anything I want, like pot." *Id.* Petitioner had also given two written statements to law enforcement in 1994, and made oral statements in 2011 when he voluntarily underwent a polygraph exam. *Id.* at 5-6.

In a written statement given on April 1, 1994, Petitioner admitted that he worked in the mail room at *The Troy Record*, but denied having any relationship with the victim, including having ever been to the staff apartment where she was murdered. *Id.* at 6. Petitioner stated that, on the night of the murder, he returned home at approximately 9:45 p.m. after smoking marijuana with his friend, Kevin Hall. *Id.*

A second written statement was given on May 11, 1994, in which Petitioner denied making telephone calls to the staff apartment, ever speaking with the victim on the phone, ever calling the victim, and ever using a pay telephone at the garage across the street from his home. *Id.* at 6. Additionally, Petitioner again denied having ever been to the staff apartment where the

murder occurred, and denied having any relationship with the victim other than being coworkers. *Id.*

Upon Petitioner's request in January 2011, Petitioner was administered a polygraph exam by State Police Investigator James McCrum. *Id.* During questioning that preceded the polygraph exam, Petitioner again denied having any relationship with the victim, and denied that he had ever been to the staff apartment where the victim was murdered. *Id.* at 6-7. Petitioner also stated that he did not know how his DNA was recovered from the roll of paper towels at the murder scene. *Id.* at 7.

Following Petitioner's written statement given on April 1, 1994, Kevin Hall was interviewed and denied being with Petitioner on the night of March 23, 1994. *Id.* at 6. As part of Petitioner's defense and in an attempt to establish an alibi, Petitioner's mother and sister stated that Petitioner had a 10:00 p.m. curfew in 1994, and on the evening of March 23, 1994, he was home by 9:45 p.m. and remained there until the next morning. *Id.* at 7. Additionally, the defense offered the testimony of John Libolsi who had known the victim's son for thirty years. *Id.* Libolsi testified that he saw the victim's son, Steven Crosier, on the morning of March 24, 1994, between the hours of 12:40 p.m. and 1:40 a.m. "burst out of" a wooded area located approximately three-tenths of a mile from the apartment where the murder took place. *Id.*

**B.     Procedural History**

Petitioner and co-defendant George Mott, III were indicted on June 6, 2011, by the Rensselaer County Grand Jury for three counts of second degree murder, including intentional murder, depraved indifference murder, and felony murder. *See* Dkt. No. 1 at 2. Following a jury trial in January 2012, Mott was acquitted. *See* Dkt. No. 8 at 5. Prior to Petitioner's trial, the court granted the prosecutor's motion to dismiss the intentional murder and depraved indifference

murder counts. *Id.* On May 15, 2012, the Honorable Andrew G. Ceresia conducted a *Huntley*[1]

hearing on Petitioner's motion to suppress his statements made to the police in 1994 and 2011,

and found that his statements were voluntarily made. *Id.* at 6-8. Following a jury trial, Petitioner

was convicted of second-degree felony murder under section 125.25(3) of the New York State

Penal Law. *Id.* at 5. On September 10, 2012, Petitioner was sentenced to a term of incarceration

of twenty-five years to life. *Id.* Petitioner's conviction was affirmed by the Appellate Division,

Third Department, and leave to appeal was subsequently denied by the New York Court of

Appeals on May 10, 2016. *See Chaplin*, 134 A.D.3d at 1152-53.

On July 10, 2017, Petitioner timely filed a counseled habeas petition challenging his

conviction. *See* Dkt. No. 1. Petitioner has asserted seven grounds for habeas relief: (1) the

evidence was insufficient and the jury's verdict was against the weight of the evidence; (2) the

trial court abused its discretion in failing to instruct the jury with the circumstantial evidence

charge requiring a finding of "moral certainty;" (3) Petitioner was denied a fair trial due to failure

to suppress Petitioner's statements procured in violation of his constitutional rights; (4) the trial

court abused its discretion when it admitted evidence in violation of the best evidence rule; (5)

Petitioner was denied due process and a fair trial by the prosecutor's failure to disclose *Brady*[2]

material; (6) denial of Petitioner's constitutional right to a speedy trial; and (7) improper

admittance of alleged prior bad acts. *See id.* at 3-63. In a Report and Recommendation dated

October 2, 2018, Chief Magistrate Judge Peebles recommended that Petitioner's petition be

denied and dismissed in all respects. *See* Dkt. No. 12 at 49-50.

### III. DISCUSSION

---

[1] *People v. Huntley*, 15 N.Y.2d 72 (1965).

[2] *Brady v. Maryland*, 373 U.S. 83 (1962).

**A.      Standard of Review**

*1. AEDPA*

The enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA") brought about significant new limitations on the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254.  In discussing this deferential standard, the Second Circuit noted in *Rodriguez v. Miller*, 439 F.3d 68 (2d Cir. 2006), *cert. granted, judgment vacated and cases remanded on other grounds by,* 549 U.S. 1163 (2007), that

> a federal court may award habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the adjudication resulted in an outcome that: (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Id*. at 73 (quoting 28 U.S.C. § 2254(d)) (footnote omitted); *see also DeBerry v. Portuondo*, 403 F. 3d 57, 66 (2d Cir. 2005) (quotation omitted); *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir. 2003) (quotation omitted).

In providing guidance concerning the application of this test, the Second Circuit has observed that

> a state court's decision is "contrary to" clearly established federal law if it contradicts Supreme Court precedent on the application of a legal rule, or addresses a set of facts "materially indistinguishable" from a Supreme Court decision but nevertheless comes to a different conclusion than the Court did.  [*Williams v. Taylor*, 529 U.S. 362] at 405-406, 120 S. Ct. 1495 [(2000)]; *Loliscio v. Goord*, 263 F.3d 178, 184 (2d Cir. 2001). . . . [A] state court's decision is an "unreasonable application of " clearly established federal law if the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts" of the case before it.  *Williams*, 529 U.S. at 413, 120 S. Ct. 1495.

*Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007); *see also Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Francis S. v. Stone*, 221 F. 3d 100, 108-09 (2d Cir. 2000)).

Significantly, a federal court engaged in habeas review is not charged with determining whether a state court's determination was merely incorrect or erroneous, but instead whether such determination was "objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2009); *see also Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001) (citation omitted). Courts have interpreted "objectively unreasonable" in this context to mean that "some increment of incorrectness beyond error" is required for the habeas court to grant the application. *Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006) (quotation omitted).

As the Second Circuit has further instructed, the necessary predicate for a federal habeas court's deferential review is that a petitioner's federal claim has been 'adjudicated on the merits' by the state court. *Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003). "If a state court has not adjudicated the claim 'on the merits,'" the federal habeas court applies the pre-AEDPA standards, and reviews *de novo* the state court disposition of the petitioner's federal claims. *Id.* (quoting *Aparicio v. Artuz,* 269 F.3d 78, 93 (2d Cir. 2001)). "[A] state court 'adjudicates' a petitioner's federal constitutional claims 'on the merits' when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment.'" *Norde v. Keane,* 294 F.3d 401, 410 (2d Cir. 2002) (quoting *Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir. 2001)). To determine whether a state court has disposed of a claim on the merits, a court will consider: "(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits." *Aparicio,* 269 F.3d at 93 (quoting *Sellan,* 261 F.3d at 314).

### 2. Review of a Report and Recommendation

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (2006). When a party files general objections, however, the court reviews those recommendations for clear error. *See O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

A litigant's failure to file objections to a magistrate judge's report and recommendation, even when that litigant is proceeding *pro se*, waives any challenge to the report on appeal. *See Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point") (citation omitted). A *pro se* litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. *See Frank v. Johnson*, 958 F.2d 298, 299 (2d Cir. 1992); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (holding that a *pro se* party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and former 6(e) of the Federal Rules of Civil Procedure).

### B.     Weight of the Evidence and Legal Sufficiency

Petitioner argues that the verdict was against the weight of the evidence and the evidence presented was insufficient to support the jury's verdict. Dkt. No. 1 at 3-26; Dkt. No. 12 at 14. Respondent argues that Petitioner's legal insufficiency claim lacks merit, and his weight of the evidence claim is not cognizable on habeas review because it is a claim under state law. Dkt. No. 8 at 21-27.

Review of a conviction as against the "weight of the evidence" is a product of New York state statute and, therefore, merely a state-law issue. *See Ward v. Herbert*, 509 F. Supp. 2d 253, 264 & n.3 (W.D.N.Y. 2007) (citations omitted). Since federal habeas corpus review is not available to remedy mere errors of state law, *see Estelle v. McGuire*, 502 U.S. 62, 67-69 (1991), no cognizable federal issue is presented by a habeas claim challenging the weight of the evidence adduced at trial, *see Ward*, 509 F. Supp. 2d at 264 & n.3 (citations omitted). As such, Magistrate Judge Peebles correctly determined that the Court should reject the petition insofar as it alleges that Petitioner's conviction was against the weight of the evidence.

A challenge to the sufficiency of the evidence is, however, amenable to federal habeas review. *See Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (citing *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993)). To analyze the sufficiency of the evidence of a state conviction, "'[a] federal court must look to state law to determine the elements of the crime.'" *Ponnapula*, 297 F.3d at 179 (quotation omitted). A habeas petition challenging the sufficiency of the evidence supporting a state-court conviction fails if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). This standard places a "'heavy burden'" on a habeas petitioner. *See United States v. Parkes*, 497 F.3d 220, 225 (2d Cir. 2007) (quotation and other citations omitted). When making its determination, the court is required to "consider the evidence

in the light most favorable to the prosecution and make all inferences in its favor." *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000).

To convict Petitioner of the remaining second degree murder, the prosecution was required to prove that Petitioner,

> [a]cting either alone or with one or more other persons . . . commit[ted] or attempt[ed] to commit robbery . . . and, in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant, if there be any, cause[d] the death of a person other than one of the participants[.]

N.Y. Penal Law § 125.25(3). To show that Petitioner committed or attempted to commit a robbery, the prosecution was required to prove that Petitioner forcibly stole, or attempted to forcibly steal, property of another. *See* N.Y. Penal Law § 160.00.

Contrary to Petitioner's assertions, the Third Department correctly determined that his conviction was supported by the evidence. As discussed in more detail in Magistrate Judge Peebles' Report and Recommendation, the evidence at trial revealed that the victim was beaten to death and that her purse, in which she carried large amounts of cash, was missing when her body was found. Therefore, the jury was permitted to reasonably infer that the victim died due to injuries inflicted during a robbery.

Additionally, there was significant evidence regarding Petitioner's participation in the robbery, including telephone records which established that a telephone call was placed to the staff apartment from a payphone located across the street from Petitioner's home during the victim's shift, along with the evidence that Petitioner used that telephone on a daily basis. Additionally, a paper towel roll, found on the kitchen counter when the victim's body was discovered, contained a bite mark impression that matched Petitioner's bite pattern and contained

Petitioner's DNA.  Further, a paper towel found hanging on a bedroom door know in the apartment contained DNA that was consistent with Petitioner's DNA.

Moreover, at trial the prosecution introduced evidence of statements made by Petitioner to Lawrence Chamberlain before the murder concerning his relationship with the victim and his knowledge that she had significant amounts of cash.  Additional evidence demonstrated that Petitioner lied to police about his relationship with the victim and that he was ever present in the apartment where the murder occurred.

As such, Magistrate Judge Peebles correctly determined that the Third Department's conclusion that the conviction was supported by legally sufficient evidence was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.  As such, this aspect of the petition is denied.

## C.    Jury Instruction: Circumstantial Evidence Charge

Petitioner argues that the trial court erred in failing to instruct the jury that, in the absence of direct evidence, circumstantial evidence must establish guilt to a "moral certainty."  Dkt. No. 1 at 27-36; *see* Dkt. No. 12 at 19-20.  Respondent argues that Petitioner's jury instruction claim is barred on an independent and adequate state law ground, not cognizable on habeas review, and is otherwise without merit.  *See* Dkt. No. 8 at 27-32.

Federal habeas review of a state-court conviction is prohibited if a state court rested its judgment on a state law ground that is "independent of the federal question and adequate to support the judgment."  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citations omitted).  "This rule applies whether the state law ground is substantive or procedural."  *Id.* (citation omitted).  Thus, if the state court "explicitly invokes a state procedural bar rule as a separate basis

for decision[,]" the federal court is precluded from considering the merits of the federal claim in a habeas petition. *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989).

Instead, the federal court's scope of review is limited to the adequacy of the state law basis to bar federal habeas review. *See Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) ("Our task is not to determine whether [the state] ruling was correct, but to determine its adequacy to preclude federal habeas review"). The Second Circuit has typically assessed the adequacy of a "state ground of decision by examining whether the rule upon which the state court relied is firmly established and regularly followed." *Downs v. Lape*, 657 F.3d 97, 102 (2d Cir. 2011). However, in exceptional cases where a state court has engaged in an "exorbitant application of a generally sound rule," the independent state law grounds will be rendered inadequate to prevent review by the federal habeas court. *Id.* "To determine whether [a] case involves an exorbitant misapplication of a state rule, [a court will] look to see if the state's application serves a legitimate state interest." *Id.* "In evaluating the state interest in a procedural rule against the circumstances of a particular case," the Second Circuit has adopted three criteria which serve as guideposts in a court's evaluation:

> "(1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state case law indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had substantially complied with the rule given the realities of trial, and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest."

*Kozlowski v. Hulihan*, 511 Fed. Appx. 21, 25 (2d Cir. 2013) (quoting *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003)).

New York's circumstantial evidence jury instruction must only be given, at the request of a defendant, when the charges against him are supported solely by circumstantial evidence. *See Norwood v. Artus*, 487 F. Supp. 2d 321, 333 (W.D.N.Y. 2007); *Lee v. Ricks*, 388 F. Supp. 2d 141, 157 (W.D.N.Y. 2005); *People v. Daddona*, 81 N.Y.2d 990, 992 (1993). When there is both direct and circumstantial evidence to support the charges against a defendant, New York's circumstantial evidence instruction does not apply and need not be given. *See Norwood*, 487 F. Supp. 2d at 333 (citations omitted); *Lee*, 388 F. Supp. 2d at 157. A court is not required to include the phrase "moral certainty" in its circumstantial evidence instructions provided that the jury is instructed, in substance, "that it must appear that the inference of guilt is the only one that can fairly and reasonably be drawn from the facts, and that the evidence excluded beyond a reasonable doubt every reasonable hypothesis of innocence." *People v. Sanchez*, 61 N.Y.2d 1022, 1024 (1984) (citations omitted); *see People v. Gonzalez*, 54 N.Y.2d 729, 730 (1981); *see also People v. Wlasiuk*, 136 A.D.3d 1101, 1104 (3d Dep't 2016) ("[A] review of the jury instructions reveals that County Court correctly instructed the jury with respect to circumstantial evidence . . . County court instructed that the jury 'must always be satisfied that the surrounding collateral facts have been proven beyond a reasonable doubt' and any inference made 'must flow reasonably and naturally from the facts proven [and] be consistent with all such facts proven'").

Under New York law, a timely objection must be interposed in order to preserve a claimed error for appellate review. *See* N.Y. C.P.L. § 470.05(2); *see also People v. Robinson*, 35 N.Y.2d 224, 228 (1975). The failure to comply with this contemporaneous objection rule has consistently been found to constitute an adequate and independent state law ground precluding habeas review. *See, e.g.*, *Downs*, 657 F.3d at 102; *Whitley*, 642 F.3d at 286.

During a preliminary jury charge conference, the trial court announced its intention to administer a circumstantial evidence charge taken directly from the criminal pattern jury instructions, and Petitioner's counsel objected and requested the inclusion of "moral certainty" language. *See* Dkt. No. 12 at 20-21. When Petitioner's counsel submitted a proposed circumstantial evidence instruction the following day that did not include the words "moral certainty," counsel told the court that after researching the issue, he was withdrawing his request for the inclusion of "moral certainty" language, and instead was requesting substitute language approved by the New York State Court of Appeals. *See id.* at 21. When the court reiterated its intention to instead give the circumstantial evidence charge from a criminal pattern jury instructions manual, Petitioner's counsel did not object either at the charge conference or following the court's instructions to the jury. *Id.*

Petitioner's counsel not only failed to object to the jury instructions both during the charge conference and following the court's instructions to the jury, but also withdrew his request for "moral certainty." Dkt. No. 12 at 20-1. Chief Magistrate Judge Peebles correctly found that Petitioner's claim is precluded by the adequate and independent ground doctrine due to his failure to object in order to preserve the claimed error for appellate review. *Id.* at 24-25; *see* N.Y. C.P.L. § 470.05(2); *see Robinson*, 35 N.Y.2d at 228. Additionally, the Court agrees with Chief Magistrate Judge Peebles' finding that, in the alternative, Petitioner's claim lacks merit because a court is not required to include the phrase "moral certainty" in its circumstantial evidence instructions, and Petitioner's counsel removed such language from his own proposed instructions. *See Sanchez*, 61 N.Y.2d at 1024; *see also Gonzalez*, 54 N.Y.2d at 730.

Accordingly, the Court denies the petition on this ground.

**D.      Failure to Suppress Petitioner's Statements**

Petitioner argues that his statements made to law enforcement on April 1, 1994, May 11, 1994, and January 20, 2011 were involuntarily made, depriving him of his Fifth and Sixth Amendment rights. *See* Dkt. No. 1 at 39-45. Respondent argues that Petitioner's Fifth and Sixth Amendment rights were not violated because the statements in question were made prior to Petitioner's arrest, and the Appellate Division properly rejected these claims on the merits. Dkt. No. 8 at 32-40.

The Fifth Amendment of the United States Constitution provides, in relevant part, that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "Governments . . . are thus constitutionally compelled to establish guilt by evidence independently and freely secured, and may not b[y] coercion prove a charge against an accused out of his own mouth." *Malloy v. Hogan*, 378 U.S. 1, 8 (1964).

The statements given on April 1, 1994 and May 11, 1994 were in the presence of Petitioner's father, with the former taking place in Petitioner's own home, and the latter during an interview that was initiated by Petitioner. *See* Dkt. No. 12 at 27-28. Specifically, Petitioner's April 1, 1994 statement was made in the presence of Troy Police Detective Sergeant John Waters and Troy Police Department Investigator Jim Mantello and lasted approximately thirty minutes. *Id.* Petitioner's May 11, 1994 statement occurred when Petitioner went to the Troy Police Station, unannounced, with a desire to "clear the air." Dkt. No. 10-9 at 48. Captain Paul, who conducted the interview, was not expecting Petitioner and Petitioner left the station with his father immediately following the interview. *See id.* at 48-50. Finally, the third statement occurred in the context of a January 20, 2011 Polygraph examination conducted at Petitioner's behest by a New York State Police Investigator. *See id.* at 104-18; Dkt. No. 10-1 at 113-14. This statement occurred when Petitioner appeared at the police station of his own volition and, prior to the

examination, conferred privately with his counsel and was advised of his *Miranda* rights by the investigator.  *See* Dkt. No. 10-9 at 105-07.

As Magistrate Judge Peebles correctly determined, given these circumstances, Petitioner has failed to establish a basis to conclude that his Fifth Amendment rights were not voluntary and were taken in violation of his Fifth Amendment rights.  Further, there is no basis to conclude that the Third Department incorrectly determined that Petitioner was not "in custody" when each of Petitioner's statements was made.  *See Milton v. Racette*, No. 1:14-cv-6001, 2016 WL 67800, *6 (W.D.N.Y. Jan. 5, 2016) (citation omitted).  As such, the Court finds that the Third Department's conclusion regarding the suppression of Petitioner's statements was neither contrary to nor an unreasonable application of clearly establish Supreme Court precedent.

Additionally, Petitioner's Sixth Amendment claim must be denied because "a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time of adversary judicial proceedings have been initiated against him."  *Kirby v. Illinois*, 406 U.S. 682, 687 (1972).  Since none of the statements at issue were made after the initiation of criminal proceedings against Petition through the filing of an indictment, his Sixth Amendment right to counsel was not implicated.  *See id.* at 689; *see also William v. Artus*, 691 F. Supp. 2d 515, 523 (S.D.N.Y. 2010).

**E.    Evidentiary Rulings**

Petitioner argues that evidentiary rulings made by the trial court during the course of his trial, regarding the testimony of Lawrence Chamberlain and the production of carbon copies of Petitioner's written statements, were made in error.  *See* Dkt. No. 1 at 45-52, 63-68.

"The Constitution requires that criminal defendants be afforded 'a meaningful opportunity to present a complete defense.'"  *Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986)).  "However,

'[t]he power of courts to exclude evidence through the application of evidentiary rules that serve the interests of fairness and reliability is well-settled.'" *Id.* (quoting *Wade v. Mantello*, 333 F.3d 51, 58 (2d Cir. 2003)). "Even erroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner 'can show that the error deprived [him] of a fundamentally fair trial.'" *Id.* (quoting *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988)).

### 1. Prior Bad Acts

Petitioner contends that the admission of testimony by Lawrence Chamberlain concerning Petitioner's alleged drug use was against the evidentiary rule established in *People v. Molineux*, 168 N.Y. 264 (1901). Dkt. No. 1 at 63-68; Dkt. No. 12 at 32. Respondent argues that this claim is barred on an adequate and independent state law ground and is not cognizable on habeas review because the Appellate Division held that this claim was unpreserved. *See* Dkt. No. 8 at 53-57.

Under the *Molineux* rule, evidence of uncharged crimes and bad acts is properly excluded unless relevant to show motive, intent, absence of mistake or accident, a common scheme or plan, or identity. *Molineux*, 168 N.Y. at 264. Lawrence Chamberlain testified that he and Petitioner "used to party together" and would smoke marijuana. Dkt. No. 12 at 32 n.8. He further testified that on the day following the murder, Petitioner went to his house "to get high." *Id.* The trial court then issued a limiting instruction to the jury, advising that they should consider the testimony regarding Petitioner's drug use only as background information, and they should not infer from that testimony that Petitioner had any propensity or predisposition to engage in criminal conduct or to commit crimes. *Id.*

When Petitioner presented his *Molineux* argument to the Third Department, the court concluded that the claim was not preserved for review because his trial counsel failed to object at

trial. *See Chaplin*, 134 A.D.3d at 1152. Since Petitioner's trial counsel failed to object to Lawrence Chamberlain's testimony regarding the alleged drug use, Petitioner was procedurally barred from raising that claim on appeal. N.Y. C.P.L. § 470.05; *see also People v. Williams*, 163 A.D.3d 1160, 1164 (3d Dep't 2018) ("Defendant failed to preserve his appellate claim . . . as he made no objection on that ground at trial") (citation omitted). As Chief Magistrate Judge Peebles correctly found, "[s]ince the Third Department specifically relied on this bar in declining to review the *Molineux* argument," review of the claim is precluded by the adequate and independent state law ground doctrine. *See* Dkt. No. 12 at 33; *see also* N.Y. C.P.L. § 470.05(2); *Robinson*, 35 N.Y.2d at 228. Therefore, the Court rejects Petitioner's claim that the testimony of Lawrence Chamberlain was admitted in error and denies the petition on this ground.

### 2. Best Evidence Rule

Petitioner argues that the admission of his written statements into evidence at trial was in violation of the best evidence rule because the prosecution produced carbon copies of the documents, not the originals. *See* Dkt. No. 1 at 45-52. Respondent argues that Petitioner's best evidence claim is unexhausted, procedurally defaulted, and does not otherwise state a claim that is cognizable on federal habeas review. *See* Dkt. No. 8 at 40-42.

An application for a writ of habeas corpus may not be granted until a petitioner exhausts all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A), (B)(I), (ii). The exhaustion requirement "is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings[.]" *Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).

To properly exhaust his claims, petitioner must do so both procedurally and substantively. Procedural exhaustion requires that he raise all claims in state court prior to raising them in a federal habeas corpus petition. Substantive exhaustion requires that the petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted). The petitioner must also use the proper procedural vehicle so that the state court may pass on the merits of his claims. *See Dean v. Smith*, 753 F.2d 239, 241 (2d Cir. 1985).

If a court determines that a claim is unexhausted, it considers whether the claim is procedurally defaulted. *See Aparicio v. Artuz*, 269 F.3d 78, 89-90 (2d Cir. 2001). Once a claim has been deemed procedurally defaulted, it is subject to dismissal unless the petitioner can demonstrate "cause for the default and prejudice, or that failure to consider the claim will result in a miscarriage of justice[.]" *Id.* at 90 (citing *Coleman*, 501 U.S. at 735 n.1). To establish cause for the default and prejudice, a petitioner must show that some "objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)); *accord, Maples v. Thomas*, 565 U.S. 266, 281 (2012). On a writ for habeas relief, the court need not examine the issue of prejudice if a petitioner fails to establish adequate cause for his procedural default because habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *Carrier*, 477 U.S. at 496.

In his Report and Recommendation, Chief Magistrate Judge Peebles correctly found that Petitioner's best evidence claim is procedurally defaulted because he is no longer eligible to raise it in any state forum. *See Grey v. Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991) (holding that the

19

petitioner met his statutory exhaustion requirement because he no longer had "remedies available" in New York). Here, Petitioner has already appealed under the New York Criminal Procedure Law, and he failed to apprise the Appellate Division of any constitutional violation resulting from the claimed violation of the best evidence rule. *Chaplin*, 134 A.D.3d at 1152. Petitioner cannot now raise this argument in a motion to vacate his conviction, because the argument is based upon matters in the trial record. *See* N.Y. C.P.L. § 440.10(2)(b). Additionally, Petitioner has not offered a basis to excuse his procedural default with respect to the constitutional claim surrounding the alleged best evidence rule violation. Dkt. No. 12 at 38. Accordingly, Petitioner's best evidence claim is forfeited.

Moreover, even if the Court were to review the merits of the evidentiary ruling at issue, Petitioner would still not be entitled to relief. "[T]o establish that an erroneous application of state rules of evidence violates the federal guarantee of due process, [the petitioner] must also demonstrate that the state court's erroneous conclusions about New York evidence law were so egregious as to implicate the Fourteenth Amendment's guarantee of due process." *Evans v. Fischer*, 712 F.3d 125, 133 (2d Cir. 2013). Under New York's best evidence rule, when a party seeks to prove the contents of a writing, the original must be produced unless there is a satisfactory explanation for its absence. *Prince*, RICHARDSON EVIDENCE § 10-101; *see also Schozer v. William Penn. Life Ins. Co. of N.Y.*, 84 N.Y.2d 639, 643 (1994) ("The . . . best evidence rule simply requires the production of an original writing where its contents are in dispute and sought to be proven") (citations omitted). As correctly noted by the Third Department, carbon copies are considered originals under the best evidence rule. *Chaplin*, 134 A.D.3d at 1152; *see also People v. Kolp*, 49 A.D.2d 139, 141 (3d Dep't 1975) ("On such multi-copy forms, all duplicates or counterparts are regarded as originals and any such duplicate copies

are admissible as originals"); *People v. Sims*, 127 A.D.2d 712, 713 (2d Dep't 1987) ("There is no error in the use of a copy . . . instead of the original, as this was a multi-copy form"). Accordingly, the Court finds that the Third Department's determination on this issue was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

## F.     Exculpatory Evidence Claim

Petitioner asserts that a constitutional violation occurred when the prosecution failed to disclose DNA testing that was allegedly performed on the victim's fingernail scrapings to test if Petitioner's DNA was a match.  *See* Dkt. No. 1 at 52-57.  Respondent argues that this claim is without merit because the Appellate Division denied Petitioner's *Brady* claim on the merits.  Dkt. No. 8 at 45-49.

Pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), the prosecution is required to make timely disclosures of all exculpatory evidence to the defense.  A habeas petitioner may be entitled to relief upon a showing that the government violated his or her right to due process by failing to turn over "material exculpatory evidence" before trial.  *Giglio v. United States*, 405 U.S. 150, 153-54 (1972); *Strickler v. Greene*, 527 U.S. 263, 280 (1999).  "Under *Brady* and its progeny, 'the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment.'"  *United States v. Paulino*, 445 F.3d 211, 224 (2d Cir. 2006) (quoting *United States v. Jackson*, 345 F.3d 59, 70 (2d Cir. 2003)).  "To establish a *Brady* violation, a [petitioner] must show (1) that the evidence at issue is 'favorable to [him], either because it is exculpatory', or because it is impeaching; (2) the 'evidence must have been suppressed by the State, either willfully or inadvertently'; and (3) 'prejudice must have ensued.'"  *Id.* (quoting *Strickler*, 527 U.S. at 281-82).

In assessing whether a *Brady* violation has occurred, "[e]vidence is not 'suppressed' if the defendant either knew, . . . or should have known, . . . of the essential facts permitting him to take advantage of any exculpatory evidence." *United States v. LeRoy*, 687 F.2d 610, 618 (2d Cir. 1982) (internal citations omitted); *see also United States v. Agurs*, 427 U.S. 97, 103 (1976). The government is not required to disclose evidence to a defendant "who is 'on notice of the essential facts which would enable him to call the witness and thus take advantage of any exculpatory testimony he might furnish.'" *Id.* (quoting *United States v. Stewart*, 513 F.2d 957, 600 (2d Cir. 1975)). "The rationale underlying *Brady* is not to supply a defendant with all the evidence in the Government's possession which might conceivably assist the preparation of his defense, but to assure that the defendant will not be denied access to exculpatory evidence only known to the Government." *Id.* at 619 (citation omitted).

Petitioner speculates that DNA laboratory evidence may exist based upon a 1994 newspaper report which cited confidential sources for the information. *See* Dkt. No. 1 at 53-54; Dkt. No. 12 at 39-40. During the trial, Kristen Thompson, the investigative reporter who authored the article, testified that scrapings were taken from beneath the victim's fingernails and submitted for DNA testing during the investigation. Dkt. No. 12 at 42; Dkt. No. 10-13 at 269-78. On cross-examination, Thompson could not recall the source of that information, and stated that he would refuse to identify the source regardless. *See* Dkt. No. 10-13 at 277, 292-95. Thompson's testimony was stricken in its entirety as inadmissible hearsay for exercising his privilege not to identify his sources. *See id.* at 281-86, 305-11.

Both the Third Department and Chief Magistrate Judge Peebles correctly found that Petitioner's *Brady* claim is entirely speculative, and Petitioner has failed to carry his burden of establishing that the exculpatory evidence existed at the time of trial, and that the prosecutor was

in possession of that evidence. *See Chaplin*, 134 A.D.3d at 1152; Dkt. No. 12 at 42.

Additionally, Chief Magistrate Judge Peebles correctly found that, even if Petitioner did meet his

burden, he cannot show prejudice because even if the fingernail scraping had contained DNA

belonging to someone else, Petitioner would not necessarily have been eliminated as a suspect

because there was at least one other participant, George Mott, alleged to be involved in the crime.

*See* Dkt. No. 12 at 43.

Accordingly, the Court finds that the Third Department's decision rejecting Petitioner's

*Brady* claim was neither contrary to nor an unreasonable application of Supreme Court precedent.

## G.     Right to a Speedy Trial

Petitioner argues that he was denied his Sixth Amendment right to a speedy trial because

the murder occurred in March 1994, and Petitioner was not charged with the crime until June

2011. *See* Dkt. No. 1 at 58-63. Respondent argues that this claim is barred because the Appellate

Division rejected Petitioner's claim on the merits. Dkt. No. 8 at 49-53.

The Sixth Amendment of the United States Constitution provides that "[i]n all criminal

prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. Const. Amend. VI. "[I]t

is readily understandable that it is either a formal indictment or information or else the actual

restraints imposed by arrest and holding to answer a criminal charge that engage the particular

protections of the speedy trial provision of the Sixth Amendment." *United States v. Marion*, 404

U.S. 307, 320 (1971); *accord, United States v. Lovasco*, 431 U.S. 783, 788-89 (1977); *United

States v. MacDonald*, 456 U.S. 1, 6 (1982); *see also Archer v. Comm'r of Corr.*, 646 F.2d 44, 48

(2d Cir. 1981). "[T]he Sixth Amendment speedy trial right does not accrue until a defendant is

accused and that pre-accusation delay short of the period of limitations affords ground for

constitutional relief only on a showing of actual prejudice amounting to a denial of due process."

*Archer*, 646 F.2d at 48 (citing *Marion*, 404 U.S. at 313-20). Until an individual is formally accused, "a citizen suffers no restraints on his liberty[.]" *Marion*, 404 U.S. at 320.

The statute of limitations is "the primary guarantee against bringing overly stale criminal charges." *Id.* at 322 (quoting *United States v. Ewell*, 383 U.S. 116, 122 (1966)); *United States v. Cornielle*, 171 F.3d 748, 721 (2d Cir. 1999). When an indictment is brought within the time constraints of the statute of limitations, it "may nevertheless violate due process where pre-indictment delay has been show to cause 'substantial prejudice' to the defendant's ability to present his defense and 'the delay was an intentional device to gain [a] tactical advantage over the accused.'" *Cornielle*, 171 F.3d at 752 (quoting *Marion*, 404 U.S. at 324). "A defendant bears the 'heavy burden' of proving both that he suffered actual prejudice because of the alleged pre-indictment delay," and that the delay "was a course intentionally pursued by the government for an improper purpose." *Id.* (citing *United States v. Scarpa*, 913 F.2d 993, 1014 (2d Cir. 1990)).

In the present matter, the Court finds that Magistrate Judge Peebles correctly determined that Petitioner has failed to establish prejudice as a result of the delay. Petitioner provides nothing more than speculation that there may have been potential witnesses, who Petitioner fails to identify, who may have moved or lost recall of the relevant events in this case. At trial, Petitioner offered an alibi defense supported by three witnesses, none of whom claim any failure to recall the events of the night in question.

Additionally, as Magistrate Judge Peebles and the Appellate Division noted, the prosecution offered compelling reasons for the delay in this matter. Specifically, advances in DNA technology and a witness materializing in May 2011 greatly enhanced the case against Petitioner. *See Chaplin*, 134 A.D.3d at 1149. Therefore, even assuming Petitioner had demonstrated the requisite prejudice (which he has not), the petition would still be denied because

he has still failed to establish that the delay was "'a course intentionally pursued by the government for an improper purpose.'" *United States v. Baptiste*, 84 Fed. Appx. 153, 154-55 (2d Cir. 2004) (quoting *Cornielle*, 171 F.3d at 752).

Accordingly, the Court denies the petition on this ground.

## H.      Certificate of Appealability

28 U.S.C. § 2253(c)(1) provides, in relevant part, that, "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from – (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]"[3] 28 U.S.C. § 2553(c)(1).  A court may only issue a Certificate of Appealability "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2553(c)(2).

Since Petitioner has failed to make such a showing with regard to any of his claims, the Court declines to issue a Certificate of Appealability in this matter.  *See Hohn v. United States*, 524 U.S. 236, 239-40 (1998) (quotation omitted).  Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum-Decision and Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

---

[3] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed in such actions "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. §2253(c)."  Fed. R. App. P. 22(b)(1).

**ORDERS** that Magistrate Judge Peebles' October 2, 2018 Report and Recommendation is **ADOPTED in its entirety** for the reasons set forth herein; and the Court further

**ORDERS** that the petition for a writ of habeas corpus is **DENIED and DISMISSED**; and the Court further

**ORDERS** that no Certificate of Appealability shall be issued with respect to any of Petitioner's claims; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Respondent's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: December 17, 2018
        Albany, New York

Mae A. D'Agostino
U.S. District Judge